## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 17-3011-01-CR-S-RK |
| | ) |
| FELIX FRANZ FORJAN, | ) |
| | ) |
| Defendant. | ) |

### DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

COMES NOW the Defendant, aggrieved by an unlawful stop, detention, search, and seizure made by sheriff's department officers, moves this Honorable Court to suppress as evidence any and all articles taken by means of such unlawful stop, detention, and seizure and any evidence including statements or confessions, oral or written, gained by these officers by means of such detention as fruits of the poisonous tree; and as grounds for said Motion states as follows, to-wit:

1. On December 20, 2016 officers with the Christian County Sheriff's Department and the Ozark Police Department conducted a detention of the Defendant, Felix Forjan, in Christian County.

2. Deputy J. Hook made the initial stop of a vehicle in which Mr. Forjan was a operating due to an alleged traffic violation.

3. The vehicle was followed by officers for leaving a house that was under surveillance by a Springfield Police Officer.

4. Once the vehicle was stopped, Deputy Hook asked for consent to search the vehicle. That request was denied by Mr. Forjan. This stop was made at 6:41 p.m.

5. No probable cause existed at that time to conduct a search and the only purported legal purpose of the stop at that point was to investigate an alleged traffic infraction, as well as to write tickets for driving with an expired license and no proof of insurance.

6. Once consent to search was denied, Deputy Hook contacted Officer B. Wilson of the Ozark Police Department, as he was a K-9 officer.

7. Mr. Forjan was detained for several minutes while Deputies waited on the K-9 officer to arrive on scene.

8. Once Officer Wilson eventually arrived, he retrieved his K-9 from the vehicle and conducted a non-intrusive exterior sniff of the vehicle, which took another several minutes.

9. The K-9 alerted on a package of cigarettes that was outside of the vehicle and on the Defendant for the presence of possible narcotics and a search of the vehicle by officers ensued. No other reasonable suspicion existed for Deputy Hook to detain Mr. Forjan and no probable cause existed for a search of the interior of the vehicle. Deputy Hook found what he suspected to be contraband. Mr. Forjan was then arrested.

10. All tolled, Mr. Forjan was detained roadside with officers for over 25 minutes prior to the K-9 being deployed and indicating any presence of controlled substances.

11. As a result of the unreasonably long detention, Deputy Hook searched the interior of the vehicle, although the K-9 did not indicate the presence of controlled substances inside the vehicle.

Legal Analysis

The United States Supreme Court in 2015 handed down its seminal opinion in *Rodriguez v. United States*, 135 S.Ct. 1609 (2015). *Rodriguez* is very factually similar to our case. There, a police officer with the Valley Police Department on a state highway in Nebraska stopped a driver after it veered slowly onto the shoulder of the highway, stayed for about two seconds, and then jerked back onto the road. There were two people in the vehicle, a passenger and the driver, Rodriguez. The police officer who made the initial stop was a K-9 officer and had his K-9 with him at the time of the stop. After approaching the vehicle on the passenger side, the officer asked Rodriguez why he had driven on the shoulder, to which Rodriguez responded that it was to avoid a pothole. The officer then gathered Rodriguez's license, registration, and proof of insurance and asked that he accompany him back to the patrol vehicle. After being advised that he was not required to go back to his vehicle, Rodriguez elected to remain in his own vehicle.

After running the records check, the officer came back to the vehicle and began asking the passenger where the two were coming from and where they were going. After running the records check on the passenger, the officer returned to Rodriguez's vehicle a third time to issue the written warning. After the mission of the stop was completed and justification for the traffic stop was over, the officer asked Rodriguez for permission to walk his dog around the vehicle, which permission was denied. The officer then instructed Rodriguez to turn off the ignition, exit the vehicle, and stand in front of the patrol car to wait for the second officer. The deputy sheriff arrived approximately five minutes later and the original officer retrieved his K-9 from his vehicle for a walk-around. The dog alerted to the presence of drugs halfway through the second pass. "All told, seven or eight minutes had elapsed from the time Struble issued the written warning until the dog indicated the presence of drugs." *Rodriguez*, at 6. Rodriguez appealed his

ultimate conviction for possession of a large bag of methamphetamine and the United States Supreme Court "granted certiorari to resolve a division among lower courts on the question whether police routinely may extend an otherwise-completed traffic stop, absent reasonable suspicion, in order to conduct a dog sniff. *Id.*, at 7.

Among its holdings, the Supreme Court held that "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." *Id.*, at 4. The Court went on to say that "because addressing the infraction is the purpose of the stop, it may 'last no longer than is necessary to effectuate that purpose.'" *Id.*, at 8 (citing *Illinois v. Caballes*, 543 U.S. 405 (2005)). The Court further held that "beyond determining whether to issue a traffic ticket, an officer's mission includes 'ordinary inquiries incident to the traffic stop'. *Caballes*, 543 U.S., at 408. Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance…a dog sniff, by contrast, is a measure aimed at 'detecting evidence of ordinary criminal wrongdoing.'" *Rodriguez*, at 9 (quoting *Indianapolis v. Edmonds*, 531 U.S. 32 (2000).

Similar to the facts in *Rodriguez*, it is somewhat clear the Deputy Hook extended the duration of the stop for the sole purpose of awaiting the arrival of the K-9 officer from the Ozark Police Department. The original purpose of the stop was a disputed minor traffic infraction of expired tags, although the vehicle was being followed as a result of leaving a house which was being surveilled. Although officers are afforded adequate time to write tickets, the question is reasonableness. The Supreme Court made clear that "the critical question, then, is not whether the dog sniff occurs before or after the officer issues a ticket…but whether conducting the sniff "prolongs" – i.e., adds time to – the stop. *Rodriguez*, at 11. "If an officer can complete traffic-

based inquiries expeditiously, then that is the amount of "time reasonably required to complete the stop's mission.'". *Id.* (citing *Caballes*, at 407).  Here, the purpose of the stop was extended unreasonably as the true mission of the stop was a minor traffic violation, which should have been resolved within minutes.  Mr. Forjan was detained over 25 minutes before the probable cause or reasonable suspicion of criminal activity was garnered by officers, much more than the 8 minutes that the Supreme Court determined to be unreasonably long in *Rodriguez*.

Because the mission of the stop had been completed, or certainly should have been completed, by the time the K-9 officer arrived on scene, the extended detention was not legally justifiable and was thus an unreasonable seizure, violating the Fourth Amendment of the United States Constitution.  Additionally, officers had no probable cause to search the interior of the vehicle and no reasonable suspicion to conduct a traffic stop.

WHEREFORE, Defendant prays for an order suppressing the fruits of the illegal stop, seizure and search herein and for such other and further relief as the court deems just and proper.

          /s/ Adam D. Woody_____
          Adam D. Woody
          Missouri Bar # 58999
          Attorney for Defendant

LAW OFFICE OF ADAM WOODY
Attorney at Law
806 W. Battlefield, Ste. A
Springfield, MO 65807
Phone: (417) 720-4800
Fax: (417) 708-0321

**Certificate of Service**

I hereby certify that on September 14, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to Assistant U.S. Attorney.

          /s/ Adam D. Woody_____
          Adam D. Woody
          Attorney at Law