IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** Plaintiff, v. **FELIX FRANZ FORJAN,** Defendant. | Case No. 17-03011-01-CR-S-RK |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE (Doc. 27)**

COMES NOW the United States of America, by and through Thomas M. Larson, the Acting United States Attorney for the Western District of Missouri, and Abram McGull II, Assistant United States Attorney, and files this response in opposition to Felix Forjan's motion to suppress evidence that is based upon the erroneous belief that the search and seizure occurred contrary to *Rodriguez v. United* States, 135 S.Ct. 1609 (2015). (Docs 27.)[1]  This incorrect position is a misleading interpretation of *Rodriguez.*

Mr. Forjan incorrectly argues to this Court that on December 20, 2016, he was stopped for a traffic violation.  However, the facts would indicate he was stopped by Deputy Jeff Hook because Springfield, Missouri, Police Detective Jason Copley had reasonable suspicion the defendant was involved in drug trafficking.  Det. Copley had been conducting a month-long surveillance of a known drug house in Nixa, Missouri, on the very day the defendant was observed visiting the drug residence and leaving shortly thereafter.

---

[1] "Doc" refers to the district court docket entries in Forjan's criminal case, No. 17-03011-01-CR-S-RK.

1

# I. FACTS

At a hearing, the Government would be prepared to prove the following: On December 20, 2016, Springfield, Missouri, Police Department (SPD) Detective Jason Copley had been surveilling a residence located in Nixa, Missouri, for at least a month for the illegal trafficking of narcotics. Det. Copley observed the defendant's vehicle like other vehicles that stopped at that residence, pull up to that location, remain for a short period of time, and then drive off. Det. Copley radioed to Christian County, Missouri, Sheriff Office Deputy Jeff Hook to stop the defendant's vehicle for possible involvement with drug trafficking.

At approximately 6:41 p.m., Dep. Hook stopped the defendant's vehicle for the primary purpose of dispelling the reasonable suspicion of drug trafficking. Incidental to Hook's primary purpose for stopping Forjan, he learned that the defendant had no valid driver's license, an expired license plate on his vehicle and no valid proof of insurance. Almost immediately upon stopping the vehicle for suspected drug activity, Hook requested consent to search the defendant's vehicle. The defendant did not grant Hook permission to search. Dep. Hook, at approximately 6:54 p.m., requested a K-9 be sent to his location. In the interim, Dep. Hook proceeded to write the citations for the defendant's traffic violations.

At approximately 7:06 p.m., as Dep. Hook was completing the defendant's traffic citations, Ozark, Missouri, Police Department K-9 Officer Ben Wilson appeared at his location and immediately conducted a K-9 walk around the defendant's vehicle. The K-9 indicated a positive response to possible narcotic odors emanating from inside the defendant's vehicle. At that point, Dep. Hook asked the defendant why would the K-9 alert to his vehicle. Forjan stated he smokes marijuana and there may be marijuana roaches on the floor of his vehicle.

Pursuant to Dep. Hook's initial drug purpose for stopping the vehicle and the K-9's positive alert, he searched the interior of the defendant's vehicle. During the search, Dep. Hook found six bundles of suspected methamphetamine. The six bundles were wrapped in black electric tape. Dep. Hook unwrapped one of the bundles and discovered a crystal-like substance. This substance was field-tested and the test indicated positive for the presence of methamphetamine. The approximate weight of the six bundles of methamphetamine was 6.6 pounds.

## II. ARGUMENT

   A.  *Summary of Arguments*

Forjan has asked that the evidence legally obtained as a result of a lawful Fourth Amendment search and seizure be suppressed. His broad misreading of *Rodriguez* does not align with the Supreme Court's ruling in that case. And thus, the evidence should not be suppressed.

   B.  *A dog sniff conducted during a lawful stop does not violate the Fourth Amendment's proscription of unreasonable seizures.*

In *Illinois v. Caballes*, 543 U.S. 405, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005), the Supreme Court held that a dog sniff conducted during a lawful traffic stop does not violate the Fourth Amendment's proscription of unreasonable seizures. However, a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures. *Rodriguez v. United States*, 135 S. Ct. 1609, 1612, 191 L. Ed. 2d 492 (2015). A stop and seizure, constitutional at its inception, "'can become unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission" ' of the stop. *Rodriguez v. United States*, —–U.S. —––, 135 S.Ct. 1609, 1614–15, 191 L.Ed.2d 492 (2015) (quoting *Illinois v. Caballes*, 543 U.S. 405, 406, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005)).

Thus, to determine the "tolerable duration of police inquiries," the Court looks to "the seizure's 'mission'—to address the ... violation that warranted the stop and attend to related safety concerns." *Rodriguez*, 135 S.Ct. at 1614. During the detention, the police must "diligently pursue[ ] [the] . . . means of investigation" to "confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *United States v. Digiovanni*, 650 F.3d 498, 507 (4th Cir.2011) (citations omitted). "An officer ... may conduct certain unrelated checks during an otherwise lawful" stop, so long as these actions do not prolong the stop absent reasonable suspicion. *Rodriguez*, 135 S.Ct. at 1616.

Springfield, Missouri, Police Department Narcotics Unit Detective Copley informed Deputy Hook that he was watching a residence just outside of the City of Nixa because the residence was known for selling large quantities of methamphetamine. Copley explained that he had seen vehicles come and go from the residence. Copley advised Hook that a white Ford F-250 was one of the vehicles that appeared and then left the known drug residence. Copley told Hook to conduct a legitimate traffic stop for the drug-related reason on the White Ford F-250.

Central to Copley's instructions was the mission for the stop was not traffic but reasonable suspicion that illegal narcotics may be in the Ford F-250. Hook found that the vehicle displayed expired tags. In addition, Hook learned that the driver had no valid driver's license, and no proof of automobile insurance. In the process of Hook writing and preparing the tickets for the incidental purpose of the stop, he had not dispelled the reasonable suspicion that the vehicle that he stopped had just left a known drug residence and might be carrying illegal narcotics. Thus, Hook requested permission to search the vehicle and that was denied. Hook, then immediately called the K-9 unit to his location in order to "complete the mission of the stop." In the process of writing the tickets for the traffic violations, the K-9 unit arrived and immediately began to dispel the reasonable

4

suspicion that the vehicle may be carrying illegal narcotics. As Hook completed the traffic violations, the K-9 alerted to the vehicle.

Here, officers stopped Forjan based on the reasonable suspicion that he was participating in the trafficking of narcotics. A canine sniff of Forjan's vehicle to "confirm or dispel" Det. Copley's suspicions of this offense is consistent with the mission of the stop: to address the suspicion of the violation that effectuated the stop. *United States v. Digiovanni*, 650 F.3d 498, 507 (4th Cir. 2011). The investigative information about the known drug activity at the residence and vehicles leaving with illegal narcotics is well within the purview of the search or the K-9 sniff that began and ended almost simultaneously with the near conclusion of the traffic violations.

### III.  CONCLUSION

For the above-mentioned reasons, the Government respectfully requests that this Court deny defendant's motions to suppress statements and evidence. (Doc. 27)

        Respectfully submitted,

        THOMAS M. LARSON
        Acting United States Attorney

By    */s/ Abram McGull II*
        ABRAM MCGULL II
        MO BAR # 40553
        Assistant United States Attorney
        901 St. Louis St., Suite 500
        Springfield, Missouri  65806
        Telephone:  (417) 831-4406

        *Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

       The undersigned hereby certifies that a copy of the foregoing was delivered on September 28, 2017, to the CM-ECF system of the United States District Court for the Western District of Missouri for electronic delivery to all counsel of record.

                                       */s/ Abram McGull II*
                                       Abram McGull II
                                       Assistant United States Attorney

6

Case 6:17-cr-03011-SRB   Document 28   Filed 09/28/17   Page 6 of 6