# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) Case No. 17-3011-01-CR-S-RK | |
| | ) | |
| FELIX FRANZ FORJAN, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO SUPPRESS

Comes now, Defendant, by and through counsel of record, Adam Woody, and hereby submits the following suggestions in support of his Motion to Suppress filed in the above cause of action.

**I.      Forjan has Standing to Challenge the Search of the Vehicle and its Contents Because He had a Reasonable Expectation of Privacy Based on His Permissive Use and Control Over the Vehicle.**

In Fourth Amendment search and seizure challenges, the defendant must establish that he has standing to suppress the evidence from an illegal search and seizure. *See Payner v. United States*, 447 U.S. 727 (1980), 731. To determine whether the defendant has standing, courts must employ the expectation analysis under *Rakas* and its progeny. *Rakas v. Illinois*, 439 U.S. 128, 139 (1978). Thus, the defendant must show that his expectation of privacy was violated by the governmental conduct at issue. *Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980).

In *Rakas v. Illinois*, the Supreme Court noted that "it serves no useful analytical purpose to consider this principle matter of standing, distinct merits of a defendant's Fourth Amendment claim." 439 U.S. 128, 138—39 (1978). Instead, the analysis should be "on the extent of a particular defendant's rights under the Fourth Amendment, rather than on any theoretically separate, but invariably intertwined concept of standing." *Id.* at 139. Thus, post-*Rakas*, the

1

question is whether a defendant had a reasonable expectation of privacy in the place, person, or thing searched. *See Minnesota v. Olson*, 495 U.S. 91, 96 (1990). *Accord United States v. Wiley*, 847 F.2d 480, 481 (8th Cir. 1988).

The Eighth Circuit has consistently held that a non-owner driver or passenger may establish standing to assert a Fourth Amendment challenge. *See United States v. Rose*, 731 F.2d 1337, 1343 (1984) (defendant passenger who obtained permission to use vehicle from his sister provided sufficient expectation of privacy to establish standing)); *United States v. Williams*, 714 F.2d 777, 779 n.1 (8th Cir. 1983) (driver's permissive use of automobile provided sufficient expectation of privacy to establish standing) (citing *United States v. Portillo*, 633 F.2d 1313, 1317 (9th Cir. 1980), *cert. denied*, 450 U.S. 1043 (1981) (holding that the defendant who had permission to use his friend's automobile and keys to operate it had standing to contest the search of the trunk)).

The Eighth Circuit is not alone in holding that a non-owner driver may establish standing. *See*, *e.g.*, *United States v. Baker*, 221 F.3d 438, 442 (3rd Cir. 2000) (holding that an individual who borrows a car and has control over it has a legitimate expectation of privacy in it)); *United States v. Angulo-Fernandez*, 53 F.3d 1177, 1179 (10th Cir. 1995) (driver who was able to produce registration papers in the name of the person from whom he claimed to have borrowed the car had standing)); *United States v. Ponce*, 8 F.3d 989, 993 (5th Cir. 1993) (stating, "This Court has repeatedly held that when 'a person has borrowed an automobile from another, with the other's consent, the borrower becomes a lawful possessor of the vehicle and thus has standing to challenge its search.") (internal citations omitted))); *United States v. Rusher*, 966 F.2d 868, 874 (4th Cir. 1992) (holding that the defendant had a reasonable expectation of privacy in the vehicle and its contents because he was the driver and there was no evidence that he

2

illegally possessed it), *cert. denied*, 506 U.S. 926 (1992)); *United States v. Sanchez*, 943 F.2d 110, 113—14 (1st Cir. 1991) (because defendant failed to show that he either had the owner's permission to use the car or to demonstrate prior use or control of the car, the circumstances tipped in favor of denying the motion to suppress)); *United States v. Ponce*, 947 F.2d 646, 649 (2nd Cir. 1991) (defendant must show legitimate basis for possessing the vehicle, such as permission from the owner, to have standing)); *United States v. Dunson*, 940 F.2d 989, 994—95 (6th Cir. 1991) (holding that both the driver and passenger had a legitimate expectation of privacy in the car and its contents because both participated in borrowing the car from its owner and had personal belongings in the vehicle)); *United States v. Garcia*, 897 F.2d 1413, 1417—18 (7th Cir. 1990) (driver using vehicle with the permission of an absent owner has a reasonable expectation of privacy therein)); *United States v. Miller*, 821 F.2d 546, 548—49 (11th Cir. 1987) (driver of car borrowed from friend had standing)); *United States v. Portillo*, 633 F.2d 1313, 1317 (9th Cir. 1980), *cert. denied*, 450 U.S. 1043 (1981) (borrower had standing to challenge search of the car)).

In *Rose*, the Eighth Circuit upheld the district court's ruling that the defendant established standing because he had a reasonable expectation of privacy in the vehicle and its contents based on permissive use and control over it. *Rose*, 731 F.2d at 1343 (internal citations omitted). The defendant had permission from his sister to use her vehicle, had two keys to the vehicle, and drove it as much as two or three times per week. *Id*. At the time of the stop, the defendant was not driving the vehicle; instead, the defendant had given another individual permission to drive the vehicle and he was a passenger. *Id.* The defendant did not assert any ownership interest in either the vehicle or the items seized. *Id.*

In *Williams*, the permission to borrow the vehicle was more attenuated than in *Rose*. 714 F.2d

3

at 779 n.1. The vehicle was owned by the defendant's nephew's roommate. *Id.* The roommate

knew that the nephew occasionally permitted the defendant to use the vehicle. *Id.* The Eighth

Circuit upheld the district court's ruling that the defendant established standing because he had a

reasonable expectation of privacy in the vehicle and its contents based on permissive use. *Id.*

(internal citations omitted).

Here, Mr. Forjan had permissive use of the vehicle.  As he explained to police, the vehicle

belonged to his daughter and was registered under his daughter's business.  He was able to

provide the registration information establishing that.  Mr. Forjan had numerous personal

possessions in the vehicle, including a basket full of laundry and numerous other miscellaneous

items.  In fact, Deputy Hook testified that it appeared as though someone may have been living

in the vehicle.  As in *Rose*, the permissive use doctrine governs here, and Mr. Forjan has

standing to challenge this illegal search and seizure.

**II.** **Law Enforcement Unconstitutionally Prolonged the Encounter with Forjan to Conduct a Canine Sniff Absent Reasonable Suspicion of Criminal Activity.**

**A.** **Under the Fourth Amendment, Forjan was Seized.**

This Court's analysis begins with determining which of the three-categories of police-citizen

encounters that this encounter falls under. *See United States v. Poitier*, 818 2d 679, 681—82 (8th

Cir. 1987), *cert. denied*, 484 U.S. 1006 (1988). The Eighth Circuit Court of Appeals has noted,

> Supreme Court jurisprudence has placed police-citizen encounters into three-tiers
> or categories: First, there are communications between officers and citizens that
> are consensual and involve no coercion or restraint of liberty. Such encounters are
> outside the scope of the Fourth Amendment. Second, there are so-called *Terry*-
> type stops. These are brief, minimally intrusive seizures but which are considered
> significant enough to invoke Fourth Amendment safeguards and thus must be
> supported by a reasonable suspicion of criminal activity. Third, there are highly
> intrusive, full-scale arrests, which must be based on probable cause.

*Id.* at 682.

4

Not every encounter between a police officer and a citizen constitutes an unreasonable seizure under the Fourth Amendment:

> Obviously, not all personal intercourse between policemen and citizens involve 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred.

*Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). "The purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but to 'prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals.'" *United States v. Mendenhall*, 446 U.S. 544, 553—54 (1980) (quoting *United States v. Martinez-Fuente*, 428 U.S. 543, 554 (1976)).

In order to determine whether a particular encounter constitutes a Fourth Amendment detention or seizure, the test is whether, "taking into account all the circumstances surrounding the encounter, the police would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *Florida v. Bostick*, 501 U.S. 429, 437 (1991) (quoting *Michigan v. Chestnut*, 486 U.S. 567, 569 (1988)). Examples of things that would indicate a seizure, "even where the person did not attempt to leave, would be the threatening presence of several officers . . . some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Mendenhall*, 446 U.S. at 554; *accord United States v. Clark*, 743 F.2d 1255, 1258—59 (8th Cir. 1984).

The law is settled that in Fourth Amendment terms, a traffic stop entails a seizure of the driver "even though the purpose of the stop is limited and the resulting detention quite brief." *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *see also Whren v. United States*, 517 U.S. 806, 809-810 (1996).

There is no dispute that Forjan was seized.

**B.** **The Confidential Information Did Not Supply Officers with Reasonable Suspicion to Conduct the Stop and Frisk of Forjan or His Vehicle.**

Upon a motion to suppress, "the government bears the burden of showing that each individual act constituting a search or seizure under Fourth Amendment was reasonable." The government must establish that the search or seizure was reasonable by a preponderance of the evidence. *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974).

The Fourth Amendment prohibits "unreasonable searches and seizures . . . ." U.S. Const. amend. IV. To be reasonable under the Fourth Amendment, searches and seizures "must be effectuated with a warrant based on probable cause. However, under *Terry v. Ohio*, 392 U.S. 1 (1968), "an officer may, consistent with the Fourth Amendment, conduct a brief, investigative stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v.* Wardlow, 528 U.S. 119, 123 (2000). Any evidence that is obtained during a *Terry* stop without reasonable suspicion must be suppressed as "fruit of the poisonous tree."

The Fourth Amendment is not violated when a law enforcement officer briefly detains an individual to investigate the circumstance which gave rise to a reasonable suspicion that criminal activity was underway. *Terry v. Ohio*, 392 U.S.1 (1968); *accord United States v. Stephens*, 350 F.3d 778, 779 (8th Cir. 2003). A "reasonable suspicion" arises when specific and articulable facts and rational inferences therefrom [which] would lead 'a [person] of reasonable caution' to believe that an investigatory stop would be appropriate because, for example, the suspect may be in the process of committing a crime. *Terry*, 392 U.S. at 22 (citations omitted).

A stop on reasonable suspicion may be based on information from an informant, even when there is no probable cause, if the information carries sufficient "indicia of reliability" to justify a stop. *Adams v. Williams*, 407 U.S. 143, 147 (1972). There must be accurate predictive

6

information concerning criminal behavior. *Alabama v. White*, 496 U.S. 325, 329 (1990); see *also United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993). There mere fact that the suspect is found where the tipster says is not enough. *Florida v. J.L.*, 529 U.S. 266, 272 (2000) (the accurate description of the suspect's location and appearance is reliable to the extent that it will help correctly identify the person that the tipster meant to accuse, but it does not "show that the tipster has knowledge of concealed criminal activity). Instead, the reasonable suspicion at issue "requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." *Id.* As in the realm of probable cause, an anonymous tip may support reasonable suspicion under the totality of the circumstances when corroborated. *Alabama v. White*, 496 U.S. 325, 331—32 (1990); *see also United State v. McBride*, 801 F.2d 1045 (8th Cir. 1986), *cert. denied*, 479 U.S. 1100 (tip justified stop where only description of car was corroborated).

Thus, if the tip is vague and non-descriptive, it has been held that no reasonable suspicion exists. *United States v. Sanchez*, 719 F.Supp. 128 (E.D. N.Y. 1989), *aff'd without op.*, 902 F.2d 1556 (2d Cir. 1989) (unidentified reports from apartment building residents of unspecified drug transactions and fact that arrestee matched description of a tenant is not enough); *L.D.P. v. State*, 551 So.2d 1257 (Fla. App. 1989) (anonymous tip that several black males were selling drugs at street corner was too vague and non-descriptive to give reasonable suspicion to detain defendant); *Highsmith v. State*, 843 So.2d 369 (Fla. App. 2003) (known informant, vague description); *In re A.T.H.*, 106 S.W.3d 338 (Fla. App. 2003) (quoting *J.L.*, 529 U.S. at 272)); *State v. Zeilinger*, 265 Wis.2d 940, 664 N.W.2d 684 (Wis. App. 2003) (vague description of suspicious activity); *State v. Tovar*, 860 So.2d 51 (La. App. 2003) (reversed and remanded due to lack of reasonable suspicion to justify an investigatory stop based on confidential informant's

vague and non-descriptive tip).

The United States Supreme Court has applied a "totality of the circumstances approach" which considers an informant's veracity, reliability, and basis of knowledge as highly relevant in determining the value of an informant's tip. *Illinois v. Gates*, 462 U.S. 213, 214 (1983). "If the tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable." *White*, 496 U.S. at 330.

The Supreme Court has noted that, "[w]hen an informant is shown to be right about some things, he is probably right about other facts he has alleged, including the claim that the object of the tip is engaged in criminal activity." *Alabama v. White*, 496 U.S. 325, 331 (1990) (citing *Illinois v. Gates*, 462 U.S. 213, 244 (1983)). The reasonableness of such an inference is bolstered if the tip is corroborated not only by matching an identity or description, but also by accurately describing a suspect's future behavior. *Id.* at 332; *Hill*, 91 F.3d at 1069.

In *United States v. Wright*, the Eighth Circuit held that an informant's tip provided reasonable suspicion to justify an investigative stop of the defendant because the tip was from a known confidential informant, corroborated by matching the description of the individuals involved and accurately describing a suspect's future behavior, and police independently verified the details of the tip through surveillance. 844 F.3d 759, 761—63 (8th Cir. 2016). One week after making a controlled buy from the original target of the investigation, the confidential informant notified police that he and the original target would be leaving the original target's residence at a specific time with an unknown black male to purchase crack cocaine in another state. *Id.* The informant described the unknown black male's SUV, plates, and later identified the unknown black male as the name. *Id.* Thereafter, the police independently verified the details of

8

the tip by conducting surveillance on the SUV and corroborated that the vehicle arrived at the original target's residence around the specified time, departed onto I-80, and returned to the original target's residence after a period of time that would have accommodated a round trip to [the state in question]. *Id.* (citing *Draper v. United States*, 358 U.S. 307 (1959)).

In this case, the tip that was received by law enforcement was only regarding the occupant of the home in which Mr. Forjan was visiting.  There was no tip regarding Mr. Forjan and, in fact, Detective Copley and Deputy Hook explained that they had never heard the Defendant's name, had never seen his vehicle, had never seen him, and had no reason to link him to the actions of the resident of the home, other than his presence on the evening of December 20, 2016. Therefore, nothing from the confidential tip regarding the resident of the home provided officers with reasonable suspicion that Mr. Forjan was engaged in criminal activity.

## C. The Seizure Was Unconstitutional Because Law Enforcement Had No Reasonable Suspicion to Extend the Encounter in Order to Conduct a Canine Sniff of Forjan's Truck.

There is a case out of the Fifth Circuit that closely resembles ours factually, *United States v. Spears*, 636 Fed. App'x 893 (5th Cir. 2016).  However, we must begin our analysis elsewhere. In *Rodriguez v. United States*, 135 S. Ct. 1609, 1612 (2014), the Supreme Court of the United States held:

[A] police stop exceeding the time to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures. A seizure is justified only by a police-observed traffic violation, therefore, 'become[s] unlawful if it is prolonged beyond the reasonable time required to complete th[e] mission' of issuing a ticket for the violation. (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). "Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Rodrigeuz*, 135 S. Ct. at 1614 (citing *United States v. Sharpe*, 470 U.S. 675, 686 (1985)).

Beyond determining whether or not to issue a traffic ticket, an officer's mission includes "ordinary inquiries incident to the stop." *Rodriguez*, 135 S. Ct. at 1615 (citing *Caballes*, 543 at

9

408). Such inquiries include checking the driver's license, determining if there are any outstanding warrants against the driver, and inspecting the vehicle's registration and proof of insurance. *See Delaware v. Prouse*, 440 U.S. 648, 658—60 (1979). These checks serve the same objective as enforcement of the traffic laws, which is to ensure that cars on the road are being driven safely and responsibly. *Rodriguez*, 135 S. Ct. at 1615.

A dog sniff, by contrast, is aimed to "detect evidence of ordinary criminal wrongdoing," *Indianapolis v. Edmond*, 531 U.S. 32, 40—41 (2000), and "is not fairly characterized as part of the officer's traffic mission" because it lacks the same close connection to roadway safety as the ordinary inquiries mentioned above. *Rodriguez*, 135 S. Ct. at 1615. This is why the Supreme Court of the United States held that police may not extend an otherwise-complete traffic stop in order to conduct a dog sniff absent reasonable suspicion. *Id.* at 1612.

To continue to detain a vehicle's occupants after an initial stop is completed, the law enforcement officer must have been aware of "particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed." *United States v. Donnelly*, 475 F.3d 946, 952 (8th Cir. 2007) (quotation omitted) (citing *Terry v. Ohio*, 392 U.S. 1, 20-21 (1968)). "Whether an officer has reasonable suspicion to expand the scope of the traffic stop is determined by looking at the totality of the circumstances, in light of the officer's experience." *United States v. Gill*, 513 F.3d 836, 844 (8th Cir. 2008) (quotation omitted). Accordingly, Hook must have had a particularized and objective basis for suspecting that Forjan was engaged in trafficking drugs.

In *Rodriguez*, an officer stopped Rodriguez for driving on a highway shoulder in violation of Nebraska law. *Rodriguez,* 135 S. Ct. at 1612. After the officer checked the driver's license of both occupants, ran their records, and issued a warning for the traffic offense, he asked

Rodriguez for permission to walk his dog around the car. *Id.* at 1613. When Rodriguez refused, the officer detained him until a second officer arrived. *Id.* The first officer then conducted a dog sniff which ultimately led to the discovery of methamphetamine. *Id.* A period of seven or eight minutes elapsed from the time the first officer issued the written warning and the dog alerting to Rodriguez's car. *Id.* The Supreme Court of the United States reversed Rodriguez's conviction and remanded for the lower courts to determine whether the officer possessed reasonable suspicion to prolong the stop to conduct the dog sniff. *Id.* at 1616—17.

In the initial incident report, Hook did not note any circumstances giving rise to reasonable suspicion to prolong the top to conduct the dog sniff. Hook did not mention any specific, articulable reasons justifying reasonable suspicion. Nor did Hook note what, if any, criminal activity he suspected. Nothing about Forjan's demeanor could be interpreted as nervous. Transcript of Hearing on Motion to Suppress Evidence at 59—60, United States v. Forjan, (No. 17-03011-01-CR-S-RK). Forjan's hands were not shaking. Forjan did not avoid eye contact. Forjan gave a consistent statement about his immigration issues that impacted his driver's license status, gave the officer his name and Social Security Number, and provided the paperwork inside the vehicle, which Hook investigated and ultimately confirmed. Forjan was cooperative throughout the encounter. He acknowledged that his immigration status prevented him from being able to hold a valid driver's license. He explained that the vehicle was his daughter's work truck, and provided Hook the documentation in the vehicle to verify. When asked about the presence of contraband, he denied there was any present. When asked for consent to search the vehicle, he did not give it.

Furthermore, Hook noted no other new information developed during the course of the encounter that would justify further detention based on suspicion of drug-trafficking or any other

11

crime. Hook did not note any other odor of controlled substances or other contraband, *see*, *e.g.*, *United States v. Woods*, 829 F.3d 765, 679 (8th Cir. 2016) (holding that officer's detection of odor of marijuana in the defendant's vehicle supported the officer's reasonable suspicion for drug-trafficking and thus justified extension of the stop), or the presence of masking odors. *See*, *e.g.*, *United States v. Bloomingfield*, 40 F.3d 910, 918—19 (8th Cir. 1994) (en banc). There were no items commonly used for trafficking drugs present. *See*, *e.g.*, *United States v. Fladten*, 230 F.3d 1083, 1086 (8th Cir. 2000).

Hook did not note any information he knew about before approaching Forjan that would give rise to such reasonable suspicion. *See*, *e.g.*, *United States v. Maltais*, 403 F.3d 550, 556—58 (8th Cir. 2005) (holding that detention of more than ninety minutes to get a canine on the scene was reasonable when officer had knowledge that the suspect's car had hidden compartments and "that intelligence suggested he was involved in a drug smuggling ring."). Forjan made no conflicting statements regarding the purpose of his travels. *See*, *e.g.*, *United States v. Brown*, 345 F.3d 574, 578 (8th Cir. 2003). Based on the totality of the circumstances, Hook did not develop a reasonable, articulable suspicion that Forjan was transporting drugs.

Hook did not develop reasonable suspicion that Forjan was committing any crime during the course of the investigation other than minor traffic violations. Just as in *Rodriguez*, it was only after completing the "ordinary inquiries" incident to the encounter that Hook requested to search the vehicle. He observed a traffic violation and inspected the vehicle and insurance documentation, which were just as Forjan had claimed.  At that point, Hook should have written a warning or ticket for the traffic violation, or terminated the encounter without further action. Taking 12 minutes to write one ticket is not reasonable and the mission of the stop could have been concluded much faster than that.  He was clearly delaying to give the canine time to arrive

12

on scene.  His search of the vehicle absent particularized, specific suspicion of criminal wrongdoing was an unconstitutional extension of the stop for inquiries not associated with the "mission" of the encounter.

As this Court noted at the suppression hearing, this case is unique because there was no specific confidential information about this vehicle or driver, which could result in a finding of reasonable suspicion. *See United States v. Spotts*, 275 F.3d 714 (8th Cir. 2002); *United States v. Robinson*, 119 F.3d 663 (8th Cir. 1997). In *Utah v. Strieff*, the Supreme Court of the United States assumed, without deciding, that law enforcement lacked reasonable suspicion for the initial stop when the only basis was that Strieff was observed leaving a residence that was being surveilled based on a tip of "narcotics activity." 136 S. Ct. 2056, 2059, 2062 (2016) (State conceded the point).

In a factually analogous case to ours, down to the color and type of the vehicle, the Fifth Circuit held that there was no reasonable suspicion to conduct a *Terry* stop on a vehicle solely for leaving a surveilled residence and reversed and remanded the case for a new trial. *United States v. Spears*, 636 Fed. App'x 893 (5th Cir. 2016). Spears visited a house that law enforcement had under surveillance for drug activity based on information from a confidential informant. *Id.* at 894. After being observed leaving the residence, Spears was pulled over for committing a traffic violation. *Id.*

The Fifth Circuit held that Spears' visit to the surveilled house linked to drug activity "standing alone [was] not enough to [support] a reasonable suspicion that anybody found there is involved with drugs." *Id.* at 899 (internal citations omitted). The Fifth Circuit noted that,

> Significantly, neither Spears nor his truck were known to the officers before he visited the [surveilled house], and he had not previously been identified as a suspect connected [to the confidential information]. Thus, the officers had no way of differentiating Spears from a law-abiding visitor—for example, a maintenance

13

technician visiting to work on the house, or a relative visiting for social purposes only. For these reasons, additional suspicious activity is needed to give rise to a reasonable suspicion that Spears had committed or was about to commit a crime.

*Id.* The Fifth Circuit rejected the government's claims that the fact that Spears only stayed for ten to twenty minutes supplied the additional reasonable suspicion that Spears had committed or was about to commit a crime. *Id.* at 900 (stating, "There are many innocent reasons . . . [for] staying only a short time.") In concluding that the stop was initially only justified by reasonable suspicion for a traffic violation, "the officers' subsequent actions must have been reasonably related in scope to a traffic violation." *Id.* at 901.

Other jurisdictions have reached the same conclusion. *See State v. Bounmy*, No. 15-2225, 2017 WL 512486 (Iowa Ct. App Feb. 8, 2017) (information that the vehicle "just left" a residence known to be involved in drugs did not amount to reasonable suspicion for a vehicle stop); *State v. Schmidt*, No-A15-1245, 2016 WL 3129366, *3 (Minn. Ct. App. 2016) (parking vehicle at a "drug house" did not create reasonable suspicion of drug related activity to justify expanding the scope of the traffic stop); *State v. Washington*, 866 So.2d 1058 (La. App. 2005) (no reasonable suspicion for a *Terry* stop based only on the defendant's presence at a house under surveillance) (reversed denial of the motion to suppress and vacated the defendant's convictions and sentences); *Young v. State*, 133 S.W.3d 839 (Tex. App. 2004) (no reasonable suspicion was found to justify a vehicle stop when driver pulled up to a residence where surveillance was being conducted, stayed for a short period of time, and left) (reversed and remanded for new trial); *Bovie v. State*, 760 N.E. 2d 1195, 1198 (Ind. Ct. App. 2002) (no reasonable suspicion for a *Terry* stop for leaving a known "drug house"); *State v. Aguilar*, 912 P.2d 379, 383—84 (Ore. App. 1996) (no reasonable suspicion for *Terry* stop when defendant

14

entered into a car parked in front of a "known drug house") (reversed and remanded).

In our case, exactly as in *Spears*, the only allegation that law enforcement used to continue to detain the Defendant was the fact that he left a house under surveillance. Additionally, there had been no information that drugs were being dealt out of that house, only that the resident of the house had been known to sell drugs to an unknown person in Springfield. The fact that Mr. Forjan left this house in Nixa after staying approximately 45 minutes does not justify a continued detention following a stop for expired tags.

**D.     The Seizure of Forjan's Person Exceeded the Bounds of a *Terry* Stop.**

"In the name of investigating a person who is no more than suspected of criminal activity," police may not "seek to verify their suspicions by means that approach the conditions of arrest." *Florida v. Royer*, 460 U.S. 491, 499 (1983) (plurality) (citing *Dunaway v. New York*, 442 U.S. 200 (1979)). Such an investigative detention should "last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Royer*, 460 U.S. at 500. Further, "it is the State's burden to demonstrate that the seizure it seeks to justify on the basis of a reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure. *Id.*

Statements made during a period of illegal detention are inadmissible even though voluntarily given if they were the product of the illegal detention rather than an independent act of free will. *See Dunaway v. New York*, 442 U.S. 200, 218—19 (1979); *Brown v. Illinois*, 422 U.S. 590, 601—02 (1975).

In *Royer*, officers discovered that the defendant was travelling under an assumed name and previously knew that he paid cash for a one-way ticket and had two checked bags. *Royer*,

15

460 U.S. at 502. The Court determined that these were adequate grounds for suspecting the defendant of carrying drugs and for temporarily detaining him and his luggage, the Court concluded, "that at the time Royer produced his key to the suitcase, the detention to which he was subjected was a more serious intrusion on his personal liberty than is allowable on mere suspicion of criminal activity." *Id.* The Court affirmed the reversal of Royer's conviction because his consent was tainted by the illegal nature of his confinement." *Id.* at 501.

Here, it appears that Forjan was pulled over at 6:41 p.m., a full 25 minutes at least before the dog alerted on the cigarette package, which was outside of the truck. Even if this Court finds that law enforcement did have reasonable suspicion to detain Forjan, arresting him went far beyond the permissible bounds of an investigative stop. Like in *Royer*, the detention was illegal and appears to have risen above the level of a formal arrest.

### III.     The Inevitable Discovery Exception to the Exclusionary Rule Does Not Apply.

If the Government demonstrates that such evidence would have been inevitably discovered, then evidence obtained as a result of the *Terry* stop of Forjan's vehicle need not be suppressed under the fruit of the poisonous tree doctrine. *See United States v. Allen*, 713 F.3d 382, 387 (8th Cir. 2013); see also *Nix v. Williams*, 467 U.S. 431, 444 (1984). The "inevitable discovery" rule is an "exception to the exclusionary rule" where the evidence is admitted into evidence in spite of a proven illegality or where illegality is a close question but can be avoided by application of this rule. 1 JOHN WESLEY HALL, SEARCH & SEIZURE 542 (4th ed. 2013).

"The rule, so applied, permits the court to balance the public interest in providing a jury with all relevant and probative evidence in a criminal proceeding against society's interest in deterring unlawful behavior." *United States v. Vasquez De Reyes*, 149 F.3d 192, 195 (3d Cir. 1998); *see also United States v. Scott*, 270 F.3d 30, 42 (1st Cir. 2004) (applying inevitable

16

discovery where legal means are truly independent, inevitable, and where application will not provide incentive for police misconduct or significantly weaken Fourth Amendment protection). Inevitable discovery claims should be subjected to close scrutiny because they are made post hoc and "invite . . . self-serving assertions of the investigating officer's conduct and state of mind." HALL, supra, at 542—543 (citing *United States v. Falley*, 489 F.2d 33, 41 (2d Cir. 1973); *United States v. Paroutian*, 299 F.2d 486, 489 (2d. Cir. 1962); *Somer v. United States*, 138 F.2d 790, 791 (2d Cir. 1943)).

For the inevitable discovery exception to apply, the government must show, "by a preponderance of the evidence, that: (1) there is a reasonable probability the evidence would have been discovered by lawful means in the absence of police misconduct; and (2) the government was actively pursuing a substantial, alternative line of investigation at the time of the constitutional violation." *United States v. Thomas*, 524 F.3d 855, 858 (8th Cir. 2008) (citing *United States v. Glenn*, 152 F.3d 1047, 1049 (8th Cir. 1998); *see also Allen*, 713 F.3d at 387.

Notwithstanding the burden of proof on the question of inevitable discovery, the real issue is whether the government must show that the officers *actually, probably,* or *possibly* would have found the disputed evidence. *See Paroutian*, 299 F.2d at 489 (explaining that "a showing that the government had sufficient information available so that in the normal course of events it might have discovered the questioned evidence without an illegal search cannot excuse the illegality or cure the tainted matter . . . . The test must be one of actualities not possibilities."); *see also Fitzpatrick v. New York*, 414 U.S. 1050, 1051 (1973) (White, J., dissenting opinion from denial of certiorari) (stating "it is a significant constitutional question whether the 'independent source' exception to inadmissibility of fruits, *Wong Sun*, 371 U.S. at 487—88, encompasses a hypothetical as well as an actual independent source."); *State v. Raj*,

17

Case 6:17-cr-03011-RK   Document 41   Filed 03/20/18   Page 17 of 20

368 N.W.2d 14, 16 (there must be no doubt that the police would have found it; police would not likely have found knife tossed in dumpster before its removal to dump unless defendant told them about it); *United States v. Stevens*, No. 05-195-1, 2007 U.S. Dist. LEXIS 18690 (E.D. Pa. March 16, 2007) (reasonable suspicion did not justify officer's search of defendant's trunk; the search was premature, and inevitable discovery was not applied to save the search).

The cases are not always clear, but the "probably would have found" appears to be the proper showing for the government. *See* ALI Model Code of Pre-Arraignment Procedure § SS 290.2(5) (Official Draft 1975) ("the evidence shall be subject to suppression unless the prosecution establishes that such evidence would *probably have been discovered* by law enforcement authorities irrespective of the search and seizure, and the court finds that exclusion of such evidence is not necessary to deter violations of this Code."); *United States v. Wilson*, 671 F.2d 1291, 1293—94 (11th Cir. 1982); *United States v. Merriweather*, 777 F.2d 503, 506, *cert. denied*, 475 U.S. 1141 (even if security check was too intensive, money found would have been found during execution of subsequent validly issued search warrant where fruits of illegal search were not used to obtain warrant).

In determining whether the officers "probably would have found" the evidence, the courts should inquire into the actual facts and the officers' state of mind and apply common sense and logic and treat any hypothetical circumstance with great suspicion. *People v. Knapp*, 52 N.Y.2d 689, 422 N.E.2d 531, 536 (1981).

The government also has the burden of proving "that certain proper and predictable investigatory procedures would have been utilized in the case at bar, and . . . that those procedures would have inevitably resulted in the discovery of the evidence in question." Note, *The Inevitable Discovery Exceptions to the Constitutional Exclusionary Rule*, 74 COLUM. L. REV.

18

88, 89 n.13 (1974).

The facts and evidence adduced at the evidentiary hearing shows that the Government has not met its burden because the officer testified that he likely would have allowed Forjan to have a relative pick up the vehicle. Although Deputy Hook testified that he ultimately did an inventory search, that was because there was no one else available to pick up the vehicle. Additionally, Mr. Forjan had been arrested at that point because of the controlled substance found in the vehicle, not because of his suspended license or failure to display proper tags. Deputy Hook testified that typically when he cites someone for driving with a revoked or suspended license, he will not let the person drive away, but he will let a relative or friend come and pick up the driver and the vehicle. He testified that he had not made that determination in this case, so the Government has not met it's burden to prove that an inventory search "probably would have" happened in the absence of the illegal detention, search, and ultimate arrest.

FOR THESE REASONS, Defendant respectfully requests that his Motion to Suppress be sustained, and for such other and further relief as the Court deems just and proper.

 /s/ Adam D. Woody_____
Adam D. Woody
Missouri Bar # 58999
Attorney for Defendant

LAW OFFICE OF ADAM WOODY
Attorney at Law
806 W. Battlefield, Ste. A
Springfield, MO 65807
Phone: (417) 720-4800
Fax: (417) 708-0321
adam@adamwoody.com

19

**Certificate of Service**

       I hereby certify that on March 20, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to Assistant U.S. Attorney.

                             /s/ Adam D. Woody_____

                             Adam D. Woody

                             Attorney at Law