# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 6:17-03011-CR-RK |
| | ) |
| FELIX FRANZ FORJAN, | ) |
| | ) |
| Defendant. | ) |

## ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

Before the Court is Defendant's Motion to Suppress Evidence. (Doc. 27.) Following an evidentiary hearing by United States Magistrate Judge David P. Rush, an additional hearing by this Court, and several rounds of briefing, the motion is ready for decision. (Docs. 28, 39, 41, 42, 44, 45, 47, 48, 53, 55, 59, 60.) After careful consideration, and for the reasons below and in Parts I, II.C, II.D, and II.E of Judge Rush's Report and Recommendation (Doc. 43 at 2-5, 9-17), the motion is **DENIED**.

### Discussion

The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court also "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* The Court has discretion to review issues not raised in an objection to this Court. *Thomas v. Arn*, 474 U.S. 140, 154 (1985).

Here, Defendant objected to two of Judge Rush's conclusions: (1) that the motion to suppress should be denied because he was driving his daughter's flatbed truck and failed to show he had standing to raise a Fourth Amendment challenge, and (2) that there was probable cause for the stop because the detaining officer made a reasonable mistake in concluding that the truck's registration was expired. The Court will also address (3) the Government's "inevitable discovery" argument, which the Government raised but Judge Rush did not address. As to the remaining issues, the Court has considered the evidence, arguments, and record *de novo*, and adopts Judge Rush's findings and conclusions.

**I.      Standing**

To contest the vehicle search, Defendant must make an "affirmative showing of consensual possession." *United States v. Muhammad*, 58 F.3d 353, 355 (8th Cir. 1995). There must be "at least some evidence of consent or permission from the lawful owner[] . . . to give rise to an objectively reasonable expectation of privacy." *Id.* A defendant who lacks standing to challenge a search generally still has standing to challenge "the lawfulness of his own detention." *United States v. Green*, 442 F.3d 677, 680 (8th Cir. 2006) (citation omitted); *United States v. Durant*, 730 F.2d 1180, 1182 (8th Cir. 1984) (passenger had standing to challenge a stop).

Here, Defendant's daughter testified before this Court that she gave Defendant permission to use her truck. (Doc. 53, Transcript of the Hearing before this Court at 37-38, 43-44; Doc. 55-1 at 1, Exhibit A.) The Government now concedes this is sufficient to give Defendant standing to challenge the search, and it does not challenge his standing to contest the stop. (Doc. 59 at 5.) Accordingly, Defendant has standing.

**II.     Reasonable Mistake of Law**

"Under the Fourth Amendment, a traffic stop is reasonable if it is supported by either probable cause or an articulable and reasonable suspicion that a traffic violation has occurred." *United States v. Washington*, 455 F.3d 824, 826 (8th Cir. 2006). An "objectively reasonable" mistake of law concerning a traffic violation can provide the basis for reasonable suspicion. *Id.* at 827; *Heien v. North Carolina*, 135 S. Ct. 530, 539 (2014). A mistake is objectively reasonable "[w]here there is a basis in state law for an officer's action and some ambiguity or state custom that caused the officer to make the mistake." *Washington*, 455 F.3d at 828.

Here, Judge Rush concluded that the detaining officer, Deputy Jeffrey Hook of the Christian County, Missouri Sheriff's Department, made a reasonable mistake of law in determining that the truck's registration was expired. Defendant contends the mistake was unreasonable. The Government contends there was no mistake, but even if there was, it was reasonable. The Court reaches the same result as Judge Rush, but for different reasons, given that the parties did not analyze the truck as a commercial vehicle until the case reached this Court.

Deputy Hook was mistaken that the truck's registration was expired. Section 301.030.3 states as follows:

> All commercial motor vehicles and trailers, except those licensed under section 301.035 and those operated under agreements as provided for in sections 301.271 to 301.279,[1] shall be registered either on a calendar year basis or on a prorated basis as provided in this section. The fees for commercial motor vehicles, . . . other than those to be operated under agreements as provided for in sections 301.271 to 301.279 shall be payable not later than the last day of February of each year, except when such vehicle is licensed between April first and July first the fee shall be three-fourths the annual fee, when licensed between July first and October first the fee shall be one-half the annual fee and when licensed on or after October first the fee shall be one-fourth the annual fee. . . .

Here, Defendant's daughter testified that she obtained a commercial vehicle registration for the truck on September 26, 2016. (Doc. 53, Tr. at 41.) The license office gave her a receipt indicating that the registration would expire "12/2016" and told her it would be valid until January 1, 2017. (*Id.* at 41-46; Doc. 55-1 at 2, Exhibit C.) Contrary to the Government's assertion, the fact that she obtained the registration in September does not mean the registration could have expired at the end of November or the beginning of December. Section 301.030.3 does not contemplate a freestanding three-month registration, only full or prorated registrations that expire at the end of the calendar year. Accordingly, the truck's registration was valid at the time of the stop on December 20, 2016.

However, Deputy Hook's mistake was reasonably based on state custom, ambiguity in the the phrase "expiration month," and what appears to have been a mistake by the local license office in issuing a December 2016 plate and tab instead of January 2017. The 2016 tab indicated to Deputy Hook that the registration was expired. According to his training, experience, and consultation with a local license office prior to the hearing before this Court, a vehicle's registration is considered expired on the first day of the "expiration month" that appears on the license plate and registration tab. (Doc. 53, Tr. at 7-11, 34-36; Doc. 47-1.) For example, if a person registers a non-commercial vehicle for the first time in the second half of October 2018, the license office would issue "November" license plates and 2019 registration tabs. (Doc. 53, Tr. at 10-11.) The "expiration month" would be November 2019—the month after the twelve-month

---

[1] The parties did not address these statutory exceptions, but it is apparent they do not apply. Section 301.035 applies to commercial vehicles licensed for 12,000 pounds or less, and §§ 301.271 to 301.279 apply to non-Missouri owners operating commercial vehicles in Missouri under reciprocity agreements. Here, the truck was licensed in Missouri for 26,000 pounds and was not operating in Missouri under a reciprocity agreement. (Doc. 55-1 at 2, Exhibit C.)

registration period. (*Id.*) Although the license office would allow a month grace period to pay the renewal fee, the registration would be expired during the whole month of November 2019. (*Id.*)

The Court finds Deputy Hook's testimony on these issues to be credible and consistent with the relevant statutes and regulations. A violation of any provision of §§ 301.010 to 301.440 is an infraction. Mo. Rev. Stat. § 301.440. Although there is a statute that requires the license plate to display "the month and year in which the registration shall expire" and the use of "tabs" instead of new license plates for renewals, *id.* § 301.130.1, .6, Missouri law is silent on at least two crucial issues: which month/year combination is the expiration month that should appear on a license plate—the last month of the registration period or the month after it—and whether license plates and tabs should be interpreted the same or differently across different vehicle types (e.g., passenger, commercial, disabled, motorcycle, etc. (Doc. 53, Tr. at 34-36)). The month-long "grace period" referenced by Deputy Hook could also be rooted in a Director of Revenue regulation providing that, if a renewal is submitted "on the first day of the month following the month of expiration of the license plate, a delinquent registration renewal penalty shall be assessed." 12 Mo. Code State Regs. § 10-23.340(1)(A). "Month of expiration" is not defined by statute or regulation, and it could have two meanings: the month after the registration period, as the Government contends, or the last month of the registration period, as Defendant contends. Therefore, it is ambiguous. *See Aquila Foreign Qualifications Corp. v. Dir. of Revenue*, 362 S.W.3d 1, 3 (Mo. banc 2012) ("A statute is ambiguous when its plain language does not answer the current dispute as to its meaning.") (quotation marks and citation omitted).

Defendant argues that the "expiration month" that appears on the license plate and tab must be the last month of the registration period, not the month that follows it, because § 301.030.1 states that the registration periods for non-commercial vehicles "shall end on the last date of the twelfth month from the date of beginning." Missouri courts have not addressed this question, and it is far from clear that this is the intended effect of § 301.030.1, given that it does address what should be displayed on the license plate or use the phrase "expiration month" or "month and year in which the registration shall expire." Section 301.130.1; 12 Mo. Code State Regs. § 10-23.340(1)(A). Deputy Hook was not required to draw such a nuanced conclusion, which would have run counter to his training. *See United States v. Martin*, 411 F.3d 998, 1001 (8th Cir. 2005) ("We should not expect state highway patrolmen to interpret the traffic laws with the subtlety and expertise of a criminal defense attorney.") (quotation marks and citation omitted).

4

Defendant also contends that Deputy Hook should have known the registration was not expired because a flat-bed truck with only one license plate would always be considered a commercial vehicle subject to the calendar-year registration of § 301.030.3. However, police are not expected to distinguish among various different vehicle types when assessing whether a registration is expired; they are trained to treat all registrations as expired during the month and year listed on the face of the plate and tab issued by the license office. (Doc. 53, Tr. at 34-36.) Here, the license office issued a 2016 registration tab instead of a January 2017 plate and tab, and Deputy Hook reasonably interpreted that to mean the registration was expired in December 2016.

Finally, the relevant cases cited by Defendant are distinguishable. In *United States v. McLemore*, the Eighth Circuit held that an officer made an unreasonable mistake by stopping someone on the ground that she could not read the markings on the vehicle's temporary registration card from her police cruiser. 887 F.3d 861, 865-67 (8th Cir. 2018). At the suppression hearing, the officer could not identify any law that was potentially violated; there was no evidence that the registration card violated the applicable statute; and the state court of appeals had previously held that a stop was not justified just because the officer could not make out the markings on a temporary registration card. *Id.* In *United States v. Washington*, the Eighth Circuit held that police made an unreasonable mistake of law because the statute at issue clearly did not prohibit driving with a cracked windshield. 455 F.3d at 827-28. And in *United States v. Black*, a different court in this district held that an officer made an unreasonable mistake of law because the relevant ordinance clearly did not prohibit hanging air fresheners from the rearview mirror. 104 F. Supp. 3d 997, 998-99, 1004-08 (W.D. Mo. 2015).

Here, unlike in *McLemore*, *Washington*, and *Black*, Deputy Hook's interpretation of the law was not unreasonable. This is not a case involving some vague notion of illegality, "unmoored from actual legal authority." *Washington*, 455 F.3d at 828. Deputy Hook was correct that Missouri law required vehicles to be validly registered; there was no prior Missouri decision on point; and the Government introduced evidence of a state custom that led Deputy Hook to believe the registration was expired based on the 2016 registration tab.

This case is more like *United States v. Martin*, in which the Eighth Circuit held that a mistake of law was reasonable because the relevant ordinance was unclear about whether it required all brake lights to be in working order or just one. 411 F.3d at 1001-02. The officer testified that "it was 'common knowledge' that the law require[d] two functioning brake lights."

5

*Id.* at 1001. The Eighth Circuit stated: "While an expert defense attorney, and even a federal judge, ultimately might conclude that the plain language of the Code technically requires only that a vehicle have one 'stop light' in working order, we think it is fair to say that the Code is counterintuitive and confusing." *Id.* This rationale applies to the present case. What "expiration month" should be displayed on a Missouri license plate is ambiguous or at least confusing, given the lack of a clarifying statute, regulation, or prior Missouri judicial decision. The confusion has been further compounded in this case by state custom and either an inconsistency or error by the local licensing office in issuing a 2016 registration tab for the truck. Although the Court's careful study of § 301.030.3 and various other statutes and regulations leads to the conclusion that the registration was not expired, the registration tab told Deputy Hook otherwise. The Court cannot say his mistake was objectively unreasonable under the circumstances. Therefore, the Court finds there was probable cause for the stop because Deputy Hook made a reasonable mistake in concluding the truck's registration was expired.

### III.  Inevitable Discovery

Although the Court need not address the Government's "inevitable discovery" argument since the Court adopts the Report and Recommendation as to Parts II. D (prolonged encounter and pat-down) and II. E (probable cause to search), the Court discusses the inevitable discovery issue *gratis dictum*. The Government contends that discovery of the drugs was inevitable regardless of the constitutionality of various events that occurred after the stop (i.e., the pat-down, the search of the truck, and the length of the stop). The Court agrees. The inevitable discovery doctrine applies if the Government shows by a preponderance of the evidence that "(1) there is a reasonable probability the evidence would have been discovered by lawful means in the absence of police misconduct, and (2) the government was actively pursuing a substantial, alternative line of investigation at the time of the constitutional violation." *United States v. Thomas*, 524 F.3d 855, 858 (8th Cir. 2008).

The Government has met its burden of proof. The police were pursuing substantial, alternative lines of investigation concerning whether the vehicle was validly registered, whether Defendant was driving without a valid driver's license, and whether he had valid proof of insurance. There is also a reasonable probability the evidence would have been discovered by lawful means. Deputy Hook testified before this Court that he often allows family members or friends to pick up a vehicle when the driver does not have a valid license.

(Doc. 53, Tr. at 27-29.) However, the truck was on the side of Main Street in Nixa, Missouri, rather than in a parking space, and Defendant told Deputy Hook that his family lived hours away in either Pacific, Missouri or Union, Missouri. (*Id.* at 28; Doc. 39, Transcript of the Hearing before Judge Rush at 37-38, 65-66.) Deputy Hook made up his mind that the car would be towed as soon as he determined that Defendant did not have a valid driver's license, registration, and proof of insurance. (Doc. 53, Tr. at 12-13, 27-29; Doc. 39, Tr. at 37-38, 65-66.) This would have resulted in an inventory search of the truck and discovery of the drugs regardless of the pat-down, the search of the truck, or the length of the stop.

Defendant contends that the truck would not necessarily have been impounded because he might have been able to contact his daughter, who could have provided valid proof of insurance over the phone, and other family members or friends who lived closer to Nixa, who could have picked up the truck. The Court finds this possibility to be speculative and outweighed by the fact that Deputy Hook was sure the truck would be towed and the fact that it actually was towed and an inventory search completed. (Doc. 53, Tr. at 12-13; Doc. 39, Tr. at 37-38, 50-51, 65-66.) Therefore, the inevitable discovery doctrine applies.

## Conclusion

Accordingly, the Court **DENIES** Defendant's Motion to Suppress Evidence (Doc. 27) and **ADOPTS** Parts I, II.C, II.D, and II.E of the Report and Recommendation of United States Magistrate Judge David P. Rush (Doc. 43 at 2-5, 9-17), which shall be attached to and made a part of this Order.

**IT IS SO ORDERED.**

s/ Roseann A. Ketchmark  
ROSEANN A. KETCHMARK, JUDGE  
DATED: March 4, 2019  UNITED STATES DISTRICT COURT